And turn to our next case, which is A.M. versus the New York Department of Education, New York City Department of Education. All set? Yes, thank you. Go right ahead. May it please the Court, my name is Jason Stern. I represent the parent in this case, A.M., who is the parent of E.H., who is a student with moderate to severe autism. He, at the time of the underlying IDEA hearing in this, was seven years old and was at least          Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Today's case is looking at the Dease Alareance case that I've now September 29 of 2011. This is a case seeking tuition reimbursement at the Manhattan Children's Center for the 2012-13 school year. It went to an impartial hearing, which we lost and went to the Office of State Review. That was affirmed and, ultimately, then, this court affirmed that we're asking this court to reverse three levels, which I understand is a heavy burden to carry. However, there are some pretty fundamental errors in this case, I think, as far as the standard of review. The state review officer here made a statement that a school district or a CSE need not state methodology in an IEP. This is sort of a general rule saying, generally, this is the rule. That runs counter to some of the case law of this court, including, of course, the RE case, this court's landmark 2012 case on IDEA, which says that in circumstances where it's pretty much consensus that this is what the child needs, all the people who know the child said the child needs a particular methodology, then a CSE needs to get that into the IEP. Why was it the consensus, then? That's not true, is it? That wasn't the consensus of the city, that that particular methodology, the ABA methodology, was necessary here, right? It was the consensus of all of the experts who knew the child. The city's witness, Mr. O'Sullivan... What about the psychologist who participated in it? Yes, he participated in the meeting. Mr. O'Sullivan had never met the child. Mr. O'Sullivan had never provided service to the child. Mr. O'Sullivan had never done anything with respect to this child until he showed up that day in May of 2012 at that CSE meeting to make the recommendation. So there were eight people at that meeting. One was a parent member who apparently said nothing. So you had Mr. O'Sullivan and Ms. Somerschneid, who were the representatives from the school district, and Ms. Somerschneid had never met the kid either. In fact, she hadn't even taught in a classroom for at least five years, according to Mr. O'Sullivan. She didn't testify herself. Then you had the parent, and you had four staffers from the Manhattan Children's Center who had all been working with this student for the past year. Did Mr. O'Sullivan review all their records from MCC? That's not entirely clear to me whether he did or not. He did hear their recommendation, which was unanimously that this child can't function in the recommended six-to-one-to-one District 75 placement that Mr. O'Sullivan and Ms. Somerschneid, who are the eight people on the CSE, recommended against the opposition of five people on the CSE, where apparently the parent member abstained from expressing an opinion. So in addition to this, the evaluative material is also recommending ABA. So there's an extensive psychological evaluation from the Rusk Institute in 2010 that mentions ABA multiple times, and the requirement for intensive behavioral interventions using ABA. The only other psychological evaluation from the department from around the same time doesn't express any opinion as to what this child needs at all, and says we'll defer that to a CSE meeting. But as reported by the District Court, though, Mr. O'Sullivan concluded that, quote, many of the student's needs involve developing reciprocity, developing an awareness of peers, and maneuvering himself within the context of other children within a classroom setting. That's what he said, right? And that was based on his review of the records. I would expect that's what it was based upon, yes. And I should note that Mr. O'Sullivan did not disagree that the student needed ABA. In fact, when I asked him the question, why didn't you recommend ABA, his response was, well, we did not recommend ABA. And he's essentially saying, well, we didn't foreclose the use of ABA, but, you know, this kid's going to go to some school somewhere, and who knows what they've got. Life's a black box of chocolates. Maybe you luck out and you get ABA. But there was nobody, I mean, literally nobody who dealt with this child. There were two neurologists. There was a psychologist. There were four people from MCC at the meeting. There were another couple of people from MCC who testified at hearing. And they all said the same thing. This kid needs this intensive ABA. They said he needs the one-to-one setting. They said that this is critical for this child to learn. And the reason for this is that the child has some very severe interfering behaviors. He engages in stereotypy both vocally and motor. So he taps, he taps, he taps, he taps, he taps. He repeats what you say right back at him, echolalia. He scripts things. He repeats things he saw on TV yesterday. He'll jingle or say stuff like that or something from a cartoon. This is very disruptive in the classroom. He's extremely distractible. When he was in a department class for kindergarten, he spent all his time wandering around the room. He couldn't stay in his seat. So the one-to-one ABA program, as these experts testify, is necessary to make him available for instruction. He just can't learn. You know, you can go into a kindergarten class and wander around and maybe you know your ABCs. What did you make of his mother's testimony? He seemed to be definitely improving. That was really in kindergarten. And what his mother testified was that he couldn't stay in his seat. He wandered around the room, but he did know his ABCs. Now, as a kindergartner, maybe you can get your ABCs. Maybe you learn them at home. Your mom's singing you the song and whatnot. But now he's in second grade. The district court seemed to latch onto that, though, didn't it? I think the district court latched onto that. Is it not inappropriate for a district court to consider how a parent characterizes his or her child's development and success? Is it not inappropriate? It wouldn't be inappropriate as a matter of law for a district court to rely on that, would it? The district court's supposed to look at the preponderance of the evidence. Right. So she's talking about something that was two years before. That seems to have a lot less weight than something that's... Take your answers now. One thing before you sit down. I have two briefs in front of me. You continue to cite to the administrative record and then forcing your opponent to file the record on appeal. Your briefs are very unhelpful when you continue to refer to the administrative record and not the record that's before us. It becomes an additional burden to try and ferret through the very important arguments that you made as you made an LO, which I wrote the opinion for you and found on your behalf. I'm telling you now, if you appear in front of me again and you cite to the administrative record and not participate in filing a record, I'll ask the clerk to dismiss your appeal for failure to comply with the rules. Are we clear? Yes, Judge. Thank you. Did you want to take another minute? I know you've reserved a minute, but did you want to conclude? I'll... And we'll hear from Mr. Feinstein now. Yeah. Go ahead. Good morning. In the view of the amicus copa, the New York City Board of Education violated the IDEA by failing to set forth its specifically designed instruction in E.H.'s IEP. The IEP has to contain a statement of the special education to be provided to the child. Special education is defined as specifically or specially designed instruction to meet the unique needs of the child with a disability. The regulations define specially designed instruction as, quote, adapting as appropriate to the needs of the eligible child, the content, methodology, or delivery of instruction. Rowley made it clear that a free appropriate public education consists of educational instruction designed to meet the unique needs of the child. FAPE is provided through an IEP, an individualized education plan, that really has three parts. First, it needs to contain the student's present level of performance. Second, it needs to contain goals that we hope the child will meet during the course of the coming year. And third, and what's most important in this case, it needs to specify how the student is going to be... how the school district is going to get the student from his present level of performance to his goals. Without that third piece, nor the court are able to determine whether the FAPE offers specially designed instruction, individually designed to provide for the educational benefit of the child. Now, nowhere in Rowley does the court tell us that the IEP does not need to specify methodology. So I take it, then, that your view is that even though it was talking about 611, that doesn't... you don't see that as a methodology? I don't see... I see that as the setting. I do not see that as how the child is going to be taught, how the child is going to meet his goals. And you find no comfort in the fact that the district tells you that they do make ABA therapy available in the 611 context? That should have been in the IEP. The testimony later at the hearing is after the parents  as to placement of the child. They do not know what the school is going to provide. At the hearing, by the school psychologist, we're all in the... as you phrased them, that maybe we'll provide this. No, in our ease, it's just a little different, isn't it, though? Because everybody seemed to have been on the same page that what the child needed was the ABA therapy. And these are some of the questions that Judge Joni was asking. And there, the IEP was kind of silent to it. So the parents weren't given notice that, indeed, the school psychologist, whatever it was, was, indeed, going to get that. Is this a little... In your view, be an advocate as much as you want, in your view, is this case different because of the school psychologist, the person who hadn't actually interviewed the boy, because he seemed to think that the 611 would be more appropriate and the one-on-one, which is tied to the ABA therapy, would be more appropriate? No, our position is that the IEP should state what they're going to do. The IEP did not state that. The explanation about the social needs came later. So the 611 just wasn't good enough. There'd need to be a little bit more than that. No, yes, yes. Explain how you're going to teach the child. Okay, I got you. One last point and I'll be done. I see this, the lack of the methodology, is a procedural issue. Thank you, sir. Aaron Bloom is next. Good morning, Your Honors. My name is Aaron Bloom with the New York City Law Department. I represent the New York City Department of Education in this case. This court should affirm because the district court properly deferred to the well-reasoned opinions of both state administrative adjudicators in this case that the DOE's IEP for E.H. offered him a free, appropriate public education. The CSE recognized E.H.'s need for an intense behavioral intervention and supplied one. The IEP supplied a six-to-one-to-one specialized classroom. It had a functional behavior assessment and a behavioral improvement plan that directly addressed the students' targeted behaviors, problematic behaviors that were impeding learning and analyzed the reasons for those behaviors and suggested ways for those behaviors to be improved and ways to measure that progress. It then had a rigorous... It wasn't very general, though. No, it wasn't general at all. It was concise. It sort of stated in a concise way what the sort of proposed draft stated in longer terms. And it didn't... What's a parent to do? I mean, what's a parent to do? Are they supposed to trust the Department of Education that their child's gonna continue to get the one-on-one because one-on-one is available when they're confronted also with a school psychologist who's never seen the child at all, who uses some terms that actually don't make any sense in his report and then says, well, don't worry. They're gonna get the one-on-one. The parents have to make a decision whether they're going to object and go to court or put their child in there. That's a choice to make for the child. I mean, if this IEP had simply said six-on-one and the child will receive ABA therapy with a pull-out aid or something like this on a regular basis, it would seem to me that the parents would be hard-pressed to try and even shoehorn this into RE. But this gets... RE causes you some troubles, doesn't it? Well, so I think the school psychologist never said that and said that the class is a six-to-one-to-one, but did say that ABA is not excluded. It's just that we're gonna leave the methodological decisions up to the professionals, individual professionals who are treating the student, whether they be the specialists in the occupational therapy speech or the... Trust me. Well, what he said was that he didn't believe that the reports justified a view that ABA was the only methodology that could enable this... that could enable this student to make progress. So what was the... I mean, shouldn't the IEP at least list the various methodologies that ought to be employed? Well... Six-one-one's not a methodology. It's a setting, right? Six students, one-on-one relationships with aides, right? That's correct. Well, what the... what the school psychologist explained was that the entire setup, which was not just a six-to-one-to-one classroom, but with the FBA and BIP, which specified the behaviors to target and certain means of measuring them with the specialized one-on-one services that would be provided several hours per week of that kind of therapy. And with other supports that are built in, that that was itself an intensive behavioral intervention. And it should also be noted that under the state's own regulations, what they specify, the six-to-one-to-one program as the appropriate program for students with intensive needs who require a high degree of individual attention and intervention. So that's 8-NYC-RR-200.6, subdivision H-4-2A. And so that's... that's the highest level, and that's what the state regs specify as the intensive intervention. So I think that Dr. Ness... Dr. Nessendo-Sullivan, in this instance, you know, stated that methodological flexibility and trusting the professionals who would be treating this child in this particular instance was appropriate for this student. I'd also add that, you know, it's understandable that a parent, you know, that a parent will want what's best for their... what they view as the best thing for their child. And they may prefer the MCC or the McCartan School or one of these other private schools, but that's not what the IDEA requires in all instances. So I'd also like to address just the Rusk Institute report, which was discussed. One thing is that while it does speak... praise the ABA method, certainly, but it says that what... it says that what would benefit EH is behavioral intervention such as the ABA method. It then talks about having a full year-round school in a structured setting and applying behavioral methodologies. So it doesn't say that ABA is the only method that would allow EH to make progress. It doesn't support that. And so we have the staff members from MCC who testify and say that they think that he needs the... he needs the exact setting that we provide. But that's... But Dr. O'Sullivan, who is on the CSE, by state law, it requires someone who can independently evaluate and assess evaluation results and what they mean for instructional... how to apply that in an instructional setting. So the state law requires that the CSE independently evaluate results, come to its own conclusion and have someone there who meets the requirement that that person have himself or herself personally been the one who conducted the in-person evaluation of that student. And what did Dr. O'Sullivan review in preparation? Sure. Well, that can be found both on pages 141 to 144 of the record where he testified about what he reviewed and also on page 848 of the record which lists in the IP the documents that were reviewed. But they include the Rusk report which was based on evaluations. It includes the DOE's own psychological evaluation report in 2010. Then the DOE did another evaluation of the student for an assistive technology device which included substantive observations of the student noting the independence... noting how the student was able to use an assistive technology device, an iPad with special software to actually better independently communicate. So there was that. They also reviewed all the reports submitted by the MCC staff. And I may be leaving out one other report that they said. But those are the things that jumped to mind. So this is also another reason why this is distinguishable. It's different from the LO case where there was no evidence of what the CSC had reviewed. And I think as Judge Wesley pointed out, the RE case is very different for a number of reasons. Not only is the RE case different because there was in that case a sense that there was a clear consensus with no opposition on the notion that ABA was required, ABA in particular, but also that there was no functional behavioral assessment and behavioral improvement plan in RE which the court found very significant. There was also the fact that in RE, and I'm talking about actually the specific part of RE that deals with the student RK. There were multiple students. So the part of RE that dealt with RK, there was also an IHO decision that actually found that ABA was required and said that the IEP should be thrown out. And then the SRO overruled that. So what this court was doing in RE was actually going back to the original state administrative adjudicator's decision. And finally, I would note that in RE, one of the other cases in RE, the one that was actually about the student named RE, actually is very similar in that the court said that there were a number of evaluations and recommendations from the private school staff that ABA was required and a one-to-one was required. But the DOE psychologist said that after reviewing those reports, she didn't feel that exposure to other methodologies would be harmful and that the student would be able to make progress under various methodologies and in a six-to-one-to-one classroom. And this court said that it was appropriate to defer to that decision and thus approved and did not overturn the IEP in that case even though it rejected the notion that ABA and a one-to-one was necessary. Thank you. Thank you. Mr. Stern, you've got a minute to rebut. With respect to the Behavior Intervention Plan, which is in the record on 873, this is not, legally speaking, even a behavior intervention plan because it doesn't provide any mechanisms or methods to actually change the behavior. It says this is the behavior, verbal and motor stereotypy, and then it says, well, we expect it to decrease. But it doesn't say how. It just says we'd like it to decrease. With respect to the six-to-one-to-one, just because the regs say that six-to-one-to-one is a setting for children with highly intensive management needs doesn't mean that that makes it de jure appropriate. We still have to look at the child's individual needs. And what the regs are really saying is you can't put a kid with highly intensive management needs in a class with more than six kids. It doesn't necessarily say that six-to-one-to-one ratio is appropriate here. That one is a classroom aide who has to try to control the behaviors of the whole classroom. You have one teacher up front, you have six kids. The history here is that this kid can't deal with that. This kid needs someone there with him or he's going to get out of his seat, he's going to walk around, he's going to tap, and he's going to make a lot of noise, and he's going to echo and script. And all these things are what he has been doing. And this is why MCC is telling us he needs that one-to-one attention. With respect to the deference, and I know that the department leaned very heavily on that in the brief, I'm going to submit that the question of whether or not one puts a methodology is not the same thing as a question of competing methodologies. So the Supreme Court and this court many times have said that deference is due when questions of educational methodologies are involved, but that would be choices of methodologies, not the question as to whether or not a particular methodology should be on the IEP or not. That's more of a legal question that this court, at least in RE and some other cases, has said that in these circumstances it needs to be there. And the SRO is saying it pretty much never needs to be there, and that's the position that SRO has taken in many, many cases. So that should not be subject to deference. The SRO is not really making a finding that he doesn't need ABA. The SRO is saying I'm leaving that to the school and I'm not going to review that. Thank you. Thank you. Thank you. Thank you. Thank you very much. Thank you.